UNITED STATES DISTRICT COURT
DISTRICT OF NEBRASKA

| | |
|---|---|
| Eugene Rosales, *on behalf of himself and all others similarly situated*, | |
| Plaintiff, | Civil Action No.: |
| v. | **CLASS ACTION COMPLAINT** <br> **JURY TRIAL DEMANDED** |
| Lexington Law Firm, | |
| Defendant. | |

For this Class Action Complaint, the Plaintiff, Eugene Rosales, by and through his undersigned counsel, pleading on his own behalf and on behalf of others similarly situated, states as follows:

## INTRODUCTION

1. Plaintiff, Eugene Rosales ("Plaintiff"), brings this class action for damages, injunctive relief, and declaratory relief from the illegal actions of Defendant Lexington Law Firm ("Defendant" or "Lexington Law"). Defendant sent unauthorized automated text messages to Plaintiff's cellular phone in violation of the Telephone Consumer Protection Act (the "TCPA"), 47 U.S.C. § 227(b)(1)(A); and obtained consumer credit report information for unlawful purposes in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681b (the "FCRA").

2. Lexington Law is a law firm offering "credit repair services" to consumers.

3. In an effort to market its credit repair services, Lexington Law set up a system whereby it receives notice when certain consumers' credit reports receive inquiry. When Lexington Law receives such notification, it proceeds to send those consumers automated text messages offering its services.

4. The consumers, like Plaintiff here, have not agreed to obtain credit repair services

from Lexington Law, have not agreed to allow Lexington Law to obtain their credit report information, and have not provided Lexington Law their cellular telephone numbers or their prior express written consent to auto-dial them.

5. Lexington Law's automated text messages therefore violate the TCPA, which requires telemarketers to obtain "clear and conspicuous" express written consent before placing telemarketing calls or text messages to cellular telephones using an automatic telephone dialing system.

6. Moreover, Lexington Law obtained consumers' credit report information without consent and without a permissible purpose enumerated in the FCRA.

7. Plaintiff sues Lexington Law for its TCPA and FCRA violations individually and on behalf of all others similarly situated.

## PARTIES, JURISDICTION, AND VENUE

8. Plaintiff is, and at all times mentioned herein was, an adult individual residing in Omaha, Nebraska.

9. Lexington Law is a Utah business entity with an address of 360 North Cutler Drive, Salt Lake City, Utah 84054.

10. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331. *Mims v. Arrow Fin. Serv., LLC*, 132 S. Ct. 740, 751-53 (2012).

11. Venue is proper in this district pursuant to 28 U.S.C. § 1391, because Plaintiff resides in this district and received Defendant's text messages forming the basis of this lawsuit in this district, and thus a substantial part of the events giving rise to the claim occurred in this district.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991

12. The TCPA regulates, among other things, the use of automated telephone dialing

systems ("ATDS" or "autodialer").

13. Specifically, 47 U.S.C. § 227(1)(A)(iii) prohibits any call using an ATDS to a cellular phone without prior express consent by the person being called, unless the call is for emergency purposes.

14. 47 U.S.C. § 227(a)(1) defines an ATDS as equipment having the capacity–

   (A)   to store or produce telephone numbers to be called, using a random or sequential number generator; and

   (B)   to dial such numbers.

15. According to the Federal Communications Commission ("FCC"), an ATDS "encompass[es] any equipment that stores telephone numbers in a database and dials them without human intervention." *Nunes v. Twitter, Inc.*, No. 14-cv-02843-VC, 2014 WL 6708465, at *1 (N.D. Cal. Nov. 26, 2014); *Fields v. Mobile Messengers Am., Inc.*, No. 12-cv-05160-WHA, 2013 WL 6774076, at *3 (N.D. Cal. Dec. 23, 2013) (concluding there were genuine disputes of material fact regarding whether messages were sent using an ATDS where plaintiffs alleged that the equipment used functioned similarly to a predictive dialer in that it received numbers from a computer database and dialed those numbers without human intervention.").

16. "Human intervention" means significant human involvement in the dialing of a number, and any human involvement with phone number compilation is irrelevant. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02–278, Report and Order, 18 FCC Rcd. 14014, ¶ 132 (2003) ("2003 FCC Order") ("The basic function of [ATDS], however, has not changed—the capacity to dial numbers without human intervention." (emphasis added and omitted)); *Moore v. Dish Network L.L.C.*, 57 F. Supp. 3d 639, 654 (N.D.W. Va. 2014) ("[I]t is irrelevant under the FCC's definition of a predictive dialer that humans are involved in the process of creating the lists that are entered into

the Campaign Manager software.").

17. Moreover, the FCC has made clear that it is a system's *capacity* to dial randomly or sequentially that determines whether it is an ATDS, not its "present ability." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling and Order, CG Docket No. 02-278, FCC 15-72, at ¶ 15 (July 10, 2015) ("2015 FCC Order"); *see also Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012) ("[T]he clear language of the TCPA 'mandates that the focus be on whether the equipment has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.'" (quoting *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009))). In other words, "even when the equipment presently lack[s] the necessary software, it nevertheless [may have] the requisite capacity to be an autodialer." 2015 FCC Order, at ¶ 16.

18. A piece of equipment can possess the requisite "capacity" to satisfy the statutory definition of "autodialer" even if, for example, it requires the addition of software to actually perform the functions described in the definition. 2015 FCC Order, at ¶ 18.

19. "Prior express *written* consent" is required before making automated *telemarketing* calls, meaning there must be a written agreement, signed by the person receiving the call or text, with a "clear and conspicuous disclosure" that specifically authorizes the seller to send telemarketing communications using an automatic telephone dialing system or an artificial or prerecorded voice. 47 C.F.R. § 64.1200; *see also* 2015 FCC Order, at ¶ 98.

20. The FCC has clarified that text messages qualify as "calls" under the TCPA:

> We affirm that under the TCPA, it is unlawful to make any call using an automatic telephone dialing system or an artificial or prerecorded message to any wireless telephone number. Both the statute and our rules prohibit these calls, with limited exceptions, "to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other common carrier service, or any service for which the party is charged." **This encompasses**

> both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls, provided the call is made to a telephone number assigned to such service.

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, 18 FCC Rcd. 14014, 14115 (July 3, 2003) (emphasis supplied); *see Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 269 n.2 (3d Cir. 2013).

### ALLEGATIONS APPLICABLE TO PLAINTIFF

**A. Text Messages Sent to Plaintiff**

21. Starting in 2016, Plaintiff began receiving text messages on his cellular telephone from short-code telephone number 310-44 which stated they were from "Lexington Law."

22. The messages were sent to Plaintiff's cellular telephone number xxx-xxx-5199.

23. Plaintiff is not a Lexington Law client or customer. Lexington Law obtained Plaintiff's name and cellular telephone number through means unknown to Plaintiff.

24. The text messages received by Plaintiff marketed Lexington Law's credit repair services, for example:



5

25. Defendant did not place the text messages for an emergency purpose.

**B. Defendant's Messages are Triggered by Inquiries on Plaintiff's Credit Report**

26. Plaintiff subscribes to a credit monitoring program through Experian and thus remains up-to-date on all activity on his credit report.

27. On each occasion, Plaintiff's receipt of a text message from Lexington Law coincided with a 'hard' inquiry on Plaintiff's credit report or the negative reporting of an account on Plaintiff's credit report.

28. For instance, on February 9, 2017, Deville Asset Management reported the existence of an alleged outstanding debt on Plaintiff's credit report. Two days later, on February 11, 2017, Lexington Law sent a text message to Plaintiff advertising its credit report services.

29. In addition, on more than one occasion, Plaintiff applied for a line of credit, was denied, and then received a text message from Lexington Law shortly thereafter.

30. On information and belief, Lexington Law received information from Plaintiff's credit report regarding inquiries or reporting thereon, which triggered a text message being sent by Defendant's system to Plaintiff's cellular telephone to market Defendant's credit repair services.

31. On information and belief, Lexington Law put this automated system in place to deliver such automated text messages to thousands of consumers, not just Plaintiff.

32. Experian markets a product to debt collectors called "Collection Triggers" which allows debt collectors to receive notifications from Experian regarding events on consumers' credit reports, including when a consumer "seeks new credit." *See* https://www.experian.com/innovation/thought-leadership/monitor-recover-unpaid-debt.jsp (last visited Mar. 3, 2017).

33. 15 U.S.C. § 1681b permits access to consumer reports for several specific, enumerated permissible purposes. "Collection of an account of [a] consumer" is one of them. Marketing of credit repair services is not.

34. Upon information and belief, Lexington Law obtained such notifications from Experian, or elsewhere, for an impermissible purpose, in violation of 15 U.S.C. § 1681b(f).

35. As a result of Defendant's violation of § 1681b(f), Plaintiffs are entitled to damages, costs and attorney's fees pursuant to 15 U.S.C. § 1681n(a).

C. **Allegations Regarding the Capacity of Defendant's System**

36. The text messages sent to Plaintiff's cellular phone by Defendant were made with an ATDS as defined by 47 U.S.C. § 227(a)(1) and the FCC. The text messages were sent automatically, without any human intervention in the actual drafting or directing of the message to Plaintiff.

37. Lexington Law's website provides terms and conditions for receipt of Lexington Law's "automated texts about credit repair or credit repair marketing." *See* https://www.lexingtonlaw.com/info/sms-terms (last visited Mar. 3, 2017).[1]

38. The text messages sent by Defendant to Plaintiff's cell phone were sent with an ATDS, in that Defendant acquired Plaintiff's number, stored it in a database connected to its telephonic or computer system, and then used its system to send text messages to Plaintiff's cell phone automatically and without human intervention.

39. Defendant's system includes a computerized protocol for creating automated text messages programmed to appear customized.

---

[1] The website continues: "By continuing to participate in Lexington's Text Message Program (e.g. by not texting STOP in response to any program text), you agree to continue to receive automated texts from Lexington in accordance with your previously provided consent and these Text Message Terms."

40. Plaintiff's name and telephone number are stored on a list or database at Lexington Law. The database is connected to a computer system capable of sending text messages to cellular telephones from short-code 310-44.

41. The messages received by Plaintiff were composed of pre-written templates of text that were then automatically filled from Lexington Law's database. Using computer programming code, and replacing values, Defendant's computer programs converted the template text into messages like those received by Plaintiff. Thus, what may have appeared to be customized messages were, in fact, created through a computer algorithm with no human involvement.

42. Indeed, the name "Alycia" was a fictitious name not attributable to any actual human at Lexington Law. Plaintiff placed a call to Lexington Law as indicated in "Alycia's" message and received a man who (1) was not Alycia, (2) did not know anything about the text messages Plaintiff was receiving, and (3) was not able to locate Plaintiff in Lexington Law's customer files by name, telephone number, or social security number.

43. No human was involved in the sending of Defendant's text messages to Plaintiff.

44. Moreover, like any computer system, Defendant's computer-based text messaging system, which involves many computer servers equipped with multiple software applications, has the capacity to generate random numbers. *See* https://en.wikipedia.org/wiki/Pseudorandom_number_generator (last visited March 20, 2017).

45. Defendant's computer-based system likewise has the capacity to generate sequential numbers.

46. For instance, it has the capacity to take any number, for instance 310-555-1212, consider it as a 10-digit integer 3105551212, add 1 to it, and get a new sequential phone number.

47. Defendant's system has the capacity to store and dial the random or sequential numbers it generates just like it stored and dialed Plaintiff's number.

48. In the unlikely event that Defendant's system does not already have the capacity to generate random or sequential numbers, that capacity can be trivially added.

49. The following computer programming 'PHP'-language code could be added to Defendant's system to generate random numbers:

```php
<?php

for ($randomNumber = mt_rand(1, 9), $i = 1; $i < 10; $i++) {
    $randomNumber .= mt_rand(0, 9);
}

var_dump($randomNumber);
```

50. This simplified PHP code would generate random numbers in Defendant's ATDS system.

51. The Code would generate random numbers as follows:

```
string(10) "3446780111"
```

52. The ability to generate sequential numbers could also easily be added to Defendant's system if it does not have it currently.

53. For instance the following code could be added:

```php
<?php

$howManyYouNeed = 100;
```

```
 4    $phonePrefix = 212;
 5    $fromNumber  = 5551212;
 6
 7    for ($i = 0; $i < $howManyYouNeed; $i++) {
 8       $phoneNumber = sprintf('%3d-%07d', $phonePrefix, $fromNumber+$i);
 9       print $phoneNumber . "\n";
10    }
11
12    ?>
```

54.  The following sequential numbers would be generated:

212-5551212
212-5551213
212-5551214
212-5551215
212-5551216
212-5551217
212-5551218
212-5551219
212-5551220
212-5551221
212-5551222
212-5551223
212-5551224
212-5551225
212-5551226
212-5551227
212-5551228
212-5551229
212-5551230

212-5551231

212-5551232

**D. <u>Plaintiff was Harmed by Receipt of Defendant's Unwanted Text Messages</u>**

55. Lexington Law's messages violated Plaintiff's substantive consumer right to be free from receipt of telemarketing text messages to which he had not clearly and conspicuously consented in writing.

56. Lexington Law's messages came at inconvenient times for Plaintiff and interrupted his activities. For example, one message on February 11, 2017 was received while Plaintiff was at the mall with his wife.

57. Plaintiff found receipt of the messages alarming and disconcerting in that they referred to "repairing his credit" and because he did not know why he was receiving them and did not want to receive them.

58. Receipt of Defendant's unauthorized messages drained Plaintiff's phone battery and caused Plaintiff additional electricity expenses and wear and tear on his phone and battery.

## CLASS ACTION ALLEGATIONS

**A. <u>The Class</u>**

59. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and all others similarly situated.

60. Plaintiff represents, and is a member of the following class (the "Class"):

**All persons within the United States who, within four years of this Complaint, received on their cellular telephone at least one unauthorized text message from Defendant in which Defendant marketed its credit repair services.**

61. Defendant and its employees or agents are excluded from the Class. Plaintiff does

not know the number of members in the Class, but believes the class members number in the several thousands, if not more. Thus, this matter should be certified as a class action to assist in the expeditious litigation of this matter.

**B. Numerosity**

62. Upon information and belief, Defendant sent text messages to cellular telephone numbers of thousands of consumers throughout the United States without their prior express consent. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

63. The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's records.

**C. Common Questions of Law and Fact**

64. There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class members. These questions include:

    a. Whether Defendant sent non-emergency text messages to Plaintiff and Class members' cellular telephones using an ATDS;

    b. Whether the text messages constitute telemarketing;

    c. Whether Defendant had prior express written consent to send its automated text messages;

    d. Whether Defendant's conduct was knowing and/or willful;

    e. Whether Defendant obtained Plaintiff and Class members' credit report information for an impermissible purpose;

  f. Whether Defendant is liable for damages, and the amount of such damages; and

  g. Whether Defendant should be enjoined from such conduct in the future.

65. The common questions in this case are capable of having common answers. If Plaintiff's claims that Defendant routinely obtains credit report information for an impermissible purpose and sends automated telemarketing text messages to telephone numbers assigned to cellular telephone services without prior express written consent are accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

**D. Typicality**

66. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

**E. Protecting the Interests of the Class Members**

67. Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither Plaintiff nor his counsel has any interests which might cause them not to vigorously pursue this action.

**F. Proceeding Via Class Action is Superior and Advisable**

68. A class action is the superior method for the fair and efficient adjudication of this controversy. The interest of Class members in individually controlling the prosecutions of separate claims against Defendant is small because it is not economically feasible for Class members to bring individual actions.

69. Management of this class action is unlikely to present any difficulties. Several

courts have certified classes in TCPA actions. These cases include, but are not limited to: *Mitchem v. Ill. Collection Serv.*, 271 F.R.D. 617 (N.D. Ill. 2011); *Sadowski v. Med1 Online, LLC*, 2008 WL 2224892 (N.D. Ill., May 27, 2008); *CE Design Ltd. V. Cy's Crabhouse North, Inc.*, 259 F.R.D. 135 (N.D. Ill. 2009); *Lo v. Oxnard European Motors, LLC*, 2012 WL 1932283 (S.D. Cal., May 29, 2012).

## COUNT I
### Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*

70. Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

71. Defendant sent multiple automated text messages to cellular numbers belonging to Plaintiff and the other members of the Class without their prior express consent.

72. Each of the aforementioned messages by Defendant constitutes a violation of the TCPA.

73. Plaintiff and the Class are entitled to an award of $500.00 in statutory damages for each message sent in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B).

74. Additionally, Plaintiff and the Class are entitled to and seek injunctive relief prohibiting such conduct by Defendant in the future.

75. Further, Plaintiff and the Class are entitled to and seek a declaration from Defendant that:

- Defendant violated the TCPA;
- Defendant used an ATDS to send text messages to consumers; and
- Defendant sent messages to the Plaintiff and the Class without prior express consent.

## COUNT II
## Knowing and/or Willful Violations of the
## Telephone Consumer Protection Act,
## 47 U.S.C. § 227, et seq.

76. Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

77. Defendant knowingly and/or willfully sent multiple automated text messages to cellular numbers belonging to Plaintiff and the other members of the Class without their prior express written consent.

78. Each of the aforementioned messages by Defendant constitutes a knowing and/or willful violation of the TCPA.

79. As a result of Defendant's knowing and/or willful violations of the TCPA, Plaintiff and the Class are entitled to an award of treble damages up to $1,500.00 for each call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

80. Additionally, Plaintiff and the Class are entitled to and seek injunctive relief prohibiting such conduct by Defendant in the future.

81. Further, Plaintiff and the Class are entitled to and seek a declaration from Defendant that:

- Defendant knowingly and/or willfully violated the TCPA;

- Defendant knowingly and/or willfully used an ATDS to message Plaintiff and the Class;

- Defendant knowingly and/or willfully messaged Plaintiff and the Class with text messages knowing it did not have their prior express written consent to do so;

- It is Defendant's practice and history to place automated messages to consumers without their prior express written consent.

## COUNT III
## Willful Violations of the Fair Credit Reporting Act,
## 15 U.S.C. § 1681, et seq.

82. Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

83. The Fair Credit reporting Act limits access to consumer credit reports to several specific, enumerated permissible purposes. 15 U.S.C. § 1681b.

84. Defendant obtained Plaintiff and the Class members' credit reports without a permissible purpose as set forth in 15 U.S.C. § 1681b.

85. As a result of Defendant's violations of the FCRA, Plaintiff and the Class are entitled to an award of statutory damages pursuant to 15 U.S.C. § 1681n(a)(1);

86. Plaintiff and the Class are also entitled to punitive damages pursuant to 15 U.S.C. § 1681n(a)(2) and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3).

87. Additionally, Plaintiff and the Class are entitled to and seek injunctive relief prohibiting such conduct by Defendant in the future.

88. Further, Plaintiff and the Class are entitled to and seek a declaration from Defendant that:

- Defendant knowingly and/or willfully violated the FCRA;
- Defendant knowingly and/or willfully obtained consumer credit reports for an impermissible purpose; and
- It is Defendant's practice and history to obtain consumer credit reports in order to identify consumers to whom it can send text messages advertising its credit repair services.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court grant Plaintiff and the Class the following relief against Defendant as follows:

1. Injunctive relief prohibiting such violations of the TCPA and the FCRA by Defendant in the future;

2. Declaratory relief as stated;

3. Statutory damages of $500.00 for each and every call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B);

4. Treble damages of up to $1,500.00 for each and every call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(C);

5. Statutory damages pursuant to 15 U.S.C. § 1681n(a)(1);

6. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

7. An award of attorneys' fees and costs to counsel for Plaintiff and the Class; and

8. Such other relief as the Court deems just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

Dated: March 20, 2017

Respectfully submitted,

By: */s/ Sergei Lemberg*
Sergei Lemberg
LEMBERG LAW, LLC
43 Danbury Road
Wilton, CT 06897
Telephone: (203) 653-2250
Facsimile: (203) 653-3424
*Attorneys for Plaintiff*